UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JON E. CALDWELL,                )
                                )    No. CV-09-3041-CI
            Plaintiff,          )
                                )
v.                              )    ORDER GRANTING PLAINTIFF'S
                                )    MOTION FOR SUMMARY JUDGMENT
MICHAEL J. ASTRUE,              )    AND REMANDING FOR ADDITIONAL
Commissioner of Social          )    PROCEEDINGS PURSUANT TO
Security,                       )    SENTENCE FOUR 42 U.S.C. §
                                )    405(g)
            Defendant.          )
                                )
                                )

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 17, 24.)  Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney L. Jamala Edwards represents Defendant.  The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.)  After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Jon E. Caldwell (Plaintiff) filed for disability insurance benefits (DIB) and supplemental security income (SSI) on April 16, 2004. (Tr. 75, 411.)  Plaintiff alleged an onset date of March 25, 2003.  (Tr. 75, 411.)  Benefits were denied initially and on reconsideration.  (Tr. 56, 415.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Paul Gaughen on July 23, 2007.  (Tr. 31-53.)  Plaintiff was represented by counsel and testified at the hearing.  (Tr. 37-46.)  Medical expert

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -1

Dr. Reynolds Hoover and vocational expert William Weiss also testified. (Tr. 33-36, 46-51.) The ALJ denied benefits (Tr. 13-21) and the Appeals Council denied review. (Tr. 6.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts and will, therefore, only be summarized here.

At the time of the first hearing, Plaintiff was 44 years old. (Tr. 37.) Plaintiff has a bachelor of science degree in electronics and a master's degree in information technology. (Tr. 45.) He most recently worked as an IT manager. (Tr. 103.) Plaintiff testified he has been unable to work since a car accident in March 2003. (Tr. 37.) He testified he has trouble with concentration and trouble walking. (Tr. 38-39.) He is in constant pain in his back and legs, and the pain causes his concentration problems. (Tr. 39-40.) According to Plaintiff, laying down is the most comfortable position, and he spends a couple of hours every day laying down. (Tr. 41.) He has difficulty sleeping, low energy, and he is "scared to death" to ride in a car on the freeway. (Tr. 43.) Plaintiff testified that if he was working, there would be days he would not be able to get to the job because he sometimes cannot get out of bed due to back pain. (Tr. 45.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's]

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -2

determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a

finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -4

the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -5

1  from engaging in his or her previous occupation.  The burden then
2  shifts, at step five, to the Commissioner to show that (1) the
3  claimant can perform other substantial gainful activity, and (2) a
4  "significant number of jobs exist in the national economy" which the
5  claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.
6  1984).

7                              **ALJ'S FINDINGS**

8       At step one of the sequential evaluation process, the ALJ found
9  Plaintiff has not engaged in substantial gainful activity since March
10 25, 2003, the alleged onset date.  (Tr. 15.)  At step two, he found
11 Plaintiff has the following severe impairments: coronary artery
12 disease, hyperlipidemia, asthma, and back pain.  (Tr. 15.)  The ALJ
13 specifically found Plaintiff's mental impairments are not severe.
14 (Tr. 16.)  At step three, the ALJ found Plaintiff does not have an
15 impairment or combination of impairments that meets or medically
16 equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P,
17 App. 1. (Tr. 17.)  The ALJ then determined "claimant has the residual
18 functional capacity to perform light work except he needs to be able
19 to occasionally alternate between sitting and standing, and he cannot
20 drive as part of his job.  The claimant should not climb ladders,
21 ropes, or scaffolds, and he should not work at unprotected heights."
22 (Tr. 17.)  At step four, the ALJ found Plaintiff is capable of
23 performing past relevant work as a computer programmer.  (Tr. 20.)
24 Thus, the ALJ concluded Plaintiff has not been under a disability, as
25 defined in the Social Security Act, from March 25, 2003, through the
26 date of the decision.  (Tr. 21.)

27                                **ISSUES**

28      The question is whether the ALJ's decision is supported by

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -6

substantial evidence and free of legal error. Specifically, Plaintiff asserts the ALJ: (1) improperly rejected Plaintiff's mental impairments at step two; (2) improperly rejected the opinions of Plaintiff's treating and examining medical providers; (3) failed to consider the combined impact of Plaintiff's obesity on his other impairments; and (4) improperly concluded that Plaintiff could return to past relevant work. (Ct. Rec. 18 at 12-20.) Defendant argues the ALJ: (1) properly determined plaintiff did not have a severe mental impairment at step two; (2) properly considered the medical record; and (3) properly found that plaintiff could perform past relevant work.

**DISCUSSION**

**1.   Step Two**

Plaintiff argues the evidence establishes he has significant mental health impairments which should not have been rejected at step two. At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920©. To satisfy the step two requirement of a severe impairment, a claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28.  The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).  "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." S.S.R. 85-28.  Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." *Id.*

Further, even where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities.  20 C.F.R. § 416.929.  If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.* Thus, the issue at step two is whether ALJ had substantial evidence to find that the medical evidence clearly established the claimant did not have a medically severe impairment or combination of impairments. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

As explained in the Commissioner's policy ruling, "medical

evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." S.S.R. 85-28. Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence. The medical evidence includes opinions from a claimant's medical providers. In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester*, 81 F.3d at 830. However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The ALJ mentioned medical evidence of PTSD at step two, but concluded that Plaintiff's mental impairments are mild and do not cause significant limitations in his ability to perform basic work activities. (Tr. 16.) The ALJ observed that Dr. Rini briefly provided mental health counseling to Plaintiff after his March 2003 automobile accident. (Tr. 16.) Dr. Rini saw Plaintiff three times between October 30, 2003, and November 21, 2003, and diagnosed depression and PTSD. (Tr. 169-71.) He recorded symptoms including chronic pain, feelings of worthlessness, a sense of helplessness, trouble sleeping, a driving phobia, memory problems and depression. (Tr. 169.) Dr. Rini indicated that Plaintiff "responded well,

considering, but transportation problems made it difficult to continue," and assessed "severe limitations" on the ability to sustain work activity. (Tr. 170.)

The ALJ also noted the opinion of Dr. Reece, a psychologist who diagnosed adjustment disorder with depressed mood and posttraumatic stress disorder. (Tr. 16.) Dr. Reece examined Plaintiff and prepared a report dated July 29, 2004. (Tr. 245-48.) Dr. Reece concluded Plaintiff's mental ability to relate to others, including coworkers, and his ability to understand, remember and follow instructions were not impaired. (Tr. 248.) Plaintiff's ability to maintain attention, concentration, persistence and pace to perform repetitive tasks was mildly impaired, evidenced by slightly disrupted concentration skills. (Tr. 248.) Additionally, Dr. Reece found Plaintiff's mental ability to withstand the stress and pressure associated with day-to-day work activity is mildly impaired. (Tr. 248.)

Lastly, the ALJ cited counseling at Central Washington Comprehensive Mental Health in February and March 2007. (Tr. 16.) Plaintiff was diagnosed with posttraumatic stress disorder and it was noted he had a lot of anxiety associated with riding in a car. (Tr. 395.) Upon examination, Dr. Conklu, a psychiatrist, reported Plaintiff had problems with memory and seemed mildly anxious and somewhat restless due to pain. (Tr. 394-95.) Dr. Conklu diagnosed posttraumatic stress disorder and prescribed anti-anxiety medication.

The ALJ did not discuss the opinions of Dr. Rini, Dr. Reece, or Dr. Conklu in detail. After summarizing the evidence, he found the claimants mental impairments are mild and do not cause significant limitations in his ability to perform basic work activities. The ALJ neither assigned weight to the opinions of these doctors, nor did he

assess or specifically reject any of their conclusions. In particular, the ALJ did not explain how he resolved the conflict between Dr. Rini's opinion that Plaintiff has significant impairments and the ALJ's own conclusion that Plaintiff's mental impairments are mild. The evidence cited by the ALJ does not constitute substantial evidence of absence of a severe impairment due to PTSD. *See Webb*, 433 F.3d at 687.

Additionally, the ALJ found the testimony of the medical expert, Dr. Hoover, "highly persuasive." (Tr. 19.) As noted by the ALJ, Dr. Hoover had the opportunity to review the entire record and concluded, "The major problem now seems to be that whatever occurred at the time of his auto accident, the rear-end accident, has created a great stress in his life, and he has now . . . many of the symptoms of Post Traumatic Stress Syndrome." (Tr. 34.) Dr. Hoover's indication that Plaintiff's PTSD symptoms were his "major problem" implies that those symptoms have a greater impact on functioning than those of Plaintiff's coronary artery disease, hyperlipidemia, and back pain, all of which were determined by the ALJ to be severe impairments. (Tr. 34-35.)

Furthermore, as Plaintiff points out, the mild impairment in repetitive tasks assessed by Dr. Reece suggests a possible greater impairment in more complex tasks, particularly if concentration or memory is impacted. (Ct. Rec. 18 at 13.) S.S.R. 85-28 provides:

> If the medical evidence establishes only a slight abnormality(ies) which has no more than a minimal effect on a claimant's ability to do basic work activities, but evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work, a denial at the "not severe" step of the sequential evaluation process is inappropriate.

Plaintiff argues his past relevant work as a computer programmer

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -11

involves tasks more complex than basic work activities such as repetitive tasks. (Ct. Rec. 18 at 13.) In that case, a finding that Plaintiff can perform basic work activities does not necessarily mean that he can perform past relevant work.

In the opinions of four doctors, Plaintiff suffers from symptoms of PTSD; yet the ALJ determined PTSD is not a severe impairment. None of the doctors implied or suggested that Plaintiff was malingering or overstating his PTSD symptoms. In light of the uncontradicted diagnoses of PTSD and the weight given to Dr. Hoover's testimony by the ALJ, the court concludes the ALJ erred in not finding that PTSD is a severe impairment. The ALJ should reconsider the evidence of mental limitations and develop the record further if necessary.

**2. Medical Opinions**

    **a. Dr. Joos**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Joos, a treating physician. Dr. Joos treated Plaintiff from October 2004 to December 2004. (Tr. 250-56.) On November 17, 2004, Dr. Joos completed a medical report form and indicated that Plaintiff suffered from lumbar degenerative disc disease with S1 radiculopathy.[1] Dr. Joos reported symptoms of low back pain radiating down right leg and numbness in the right leg. (Tr. 250.) Signs reported include limited hip flexion, decreased leg coordination, and a November 2004 MRI indicating degenerative disc disease and effacement of right lateral

---

[1]The medical report is undated, but mentions the last date of treatment as November 15, 2004. (Tr. 250.) Office visit notes from November 17, 2004 indicate Plaintiff came in for follow-up of back pain and "needs filling out of some paperwork." (Tr. 253.) This suggests the medical report was completed on that date.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -12

recess.   (Tr. 250.)   Dr. Joos opined that work on a regular and continuing basis would cause Plaintiff's condition to deteriorate due to a limited ability to tolerate prolonged sitting, and because lifting and increased movement strain would increase inflammation. (Tr. 251.)  Dr. Joos also indicated Plaintiff would miss four or more days of work per month.  (Tr. 251.)

The ALJ gave little weight to Dr. Joos' opinion for two reasons. First, the ALJ pointed out that Dr. Joos had only treated Plaintiff for one month at the time of the report.  (Tr. 19.)  The length of a treating relationship and the frequency of examination is a relevant consideration in evaluating a physician's opinion.   20 C.F.R. § 404.1527(2)(I).  When a treating source has seen a patient a number of times over a long enough period of time to have obtained a longitudinal view of the impairment, the opinion is entitled to more weight.   *Id*.   It was not unreasonable for the ALJ to consider Dr. Joos' relatively short treating relationship with Plaintiff in assigning little weight to the report.  This is therefore a specific, legitimate reason for rejecting the report.

Second, the ALJ found Dr. Joos' report inconsistent with his treatment notes.  (Tr. 19.)  A discrepancy between a physician's notes and recorded observations and opinions and the physician's assessment of  limitations is a clear and convincing reason for rejecting the opinion.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes).  Treatment notes list the following observations by Dr. Joos before completing the medical report:

      10/07/04  mildly tender over lower back, leg strength full, reflexes intact

```
10/27/04  mildly tender over right iliac crest
11/01/04  mild tenderness lower lumbar area, leg strength normal
11/08/04  mildly tender low back
11/15/04  no exam observations listed
11/17/04  neuro strength is intact and reflexes symmetrical
```

(Tr. 253-56.)  Dr. Joos did not record observations of limited hip flexion and decreased leg coordination as reported on the medical report form.  (Tr. 250.)  Plaintiff's back tenderness was consistently described as "mild" by Dr. Joos' notes, and no other abnormal findings were recorded.  Dr. Joos also cited a November 2004 MRI, which shows "mild degenerative disc disease with a slight/mild eccentric right posterolateral disc bulge creating minimal effacement of the right lateral recess but no evidence of central canal stenosis or direct displacement/impingement on the right S1 nerve root."  (Tr. 257.)  On November 24 and December 23, Dr. Joos noted "the pain is better controlled" and "back pain is much improved."  (Tr. 252.)

Plaintiff asserts that Dr. Joos referred Plaintiff for an MRI because of severe back pain.[2]  (Ct. Rec. 18 at 15.)  Even if Dr. Joos used the term "severe" in the MRI referral, Dr. Joos observed only mild pain on examination.  Plaintiff also points to treatment notes which mention the need to nap during the day, pain severe enough to interfere with Mr. Caldwell's sleep, numbness after sitting, and difficulty sitting.  (Ct. Rec. 18 at 15-16, Tr. 252-53.)  However, these notes are Dr. Joos' record of Plaintiff's complaints, which the ALJ found to be not credible.[3]  Plaintiff does not challenge the ALJ's

---

[2]The MRI report says the indication is "severe" low back pain. It is not clear from the record that Dr. Joos used that term in the referral.  (Tr. 257.)

[3]Dr. Joos recorded the following complaints (Tr. 253-54):

11/01/04: "He says the pain regimen is not working."

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -14

credibility finding, but the evidence cited by Plaintiff in support of Dr. Joos' reports amounts to a restatement of his complaints.

As the ALJ concluded, Dr. Joos' notes reflect observations of mild low back pain which was improved with medication. (Tr. 19.) This is inconsistent with Dr. Joos' medical report indicating slow response to conventional therapy and pain severely limiting Plaintiff's ability to function in the workplace. Thus, substantial evidence supports the ALJ's conclusion that Dr. Joos' notes are inconsistent with his report. Although another ALJ may have concluded differently, where the evidence is susceptible to more than one interpretation, the court may not substitute its judgment for that of the ALJ. *See Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The ALJ's interpretation of Dr. Joos' records is reasonable, and the ALJ cited specific, legitimate reasons supported by substantial evidence in rejecting Dr. Joos' opinion.

**b. Dr. Havens**

Plaintiff argues the ALJ failed to properly justify rejection of Dr. Havens' opinion. (Ct. Rec. 18 at 16-17.) Dr. Havens completed a medical report dated April 30, 2007. (Tr. 408-09.) Dr. Havens noted Plaintiff's only visit with her occurred on that date. (Tr. 408.) Dr. Havens diagnosed chronic back pain, depression, asthma, and

---

11/08/04: "He says [t]he NEURONTIN is helping although he still has difficulty sleeping at night. He is on [three medications] which does not seem to be working according to him."

11/15/04: "He says he has been sleeping somewhat better but still has persistent pain in the lower back going down the right leg. Leg becomes numb of [sic] he sits for a period of time."

11/17/04: "Back pain is being better controlled with the current regimen of [medications]. He persists though with pain in the right back radiating down his leg with numbness. At times he stays in bed all day. On average he stays in bed for 5 hours a day. Sitting tends to make the pain worse and numbness."

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -15

hyperlipidemia.  (Tr. 408.)  Symptoms noted were right leg and back pain with occasional tingling and burning.  (Tr. 408.)  Dr. Havens noted clinical findings of an April 2006 MRI showing mild degenerative disc disease at L5-S1.  (Tr. 408.)  When asked whether Plaintiff had to lie down during the day, Dr. Havens wrote, "Per pt., approx. 50% of day."  Dr. Havens opined that Plaintiff's prognosis was uncertain and that it was uncertain whether work on a regular and continuing basis would cause Plaintiff's condition to deteriorate.  (Tr. 409.)  In response to a question asking whether Plaintiff would miss some work due to medical impairments if he worked a 40-hour work week, Dr. Havens checked "yes," but noted next to the check-mark "per pt." (Tr. 409.)  Dr. Havens also indicated Plaintiff would miss work on average four or more days per month.  There are no office visit notes or any other records from Dr. Havens in the record.

The ALJ gave little weight to Dr. Havens' report for several reasons.  (Tr. 20.)  First, the ALJ pointed out the report is based on Plaintiff's subjective complaints.  (Tr. 20.)  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604.  Dr. Havens specifically noted "Per pt." next to the statements that Plaintiff needs to lie down during the day and that Plaintiff would likely miss four or more days of work per month.  (Tr. 408-09.)  Plaintiff attempts to support his claim with Dr. Havens' "opinion" on these issues, but Dr. Haven herself pointed her information came from Plaintiff.  Thus, the ALJ was justified in rejecting Dr. Haven's opinion because it is based on Plaintiff's subjective complaints.

Second, the ALJ rejected Dr. Havens' report because "there is no

documentation or treatment records to support this assessment." (Tr. 20.)    A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957.    Since Dr. Haven saw Plaintiff for the first time on the day she made the report, and because there are no other office visit notes or other information showing the basis for the assessment, the report is not adequately supported.    The report has little explanatory information and it is not noted that Dr. Havens had the opportunity to review the notes or records of Plaintiff's other physicians.    It was therefore reasonable for the ALJ to conclude there is little basis for Dr. Havens' opinion.

The ALJ also mentioned possible motives underlying Dr. Havens' opinion, including sympathy for the Plaintiff or a desire to satisfy Plaintiff's request to avoid tension.    (Tr. 20.)    The ALJ noted, "While it is difficult to confirm such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case."    (Tr. 20.)    The ALJ's reasoning is speculative and without basis in the record.    If the ALJ relied on speculation about Dr. Havens' motives in rejecting the opinion, the ALJ erred.    However, errors that do not affect the ultimate result are harmless.    *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).    The error is harmless because the ALJ provided other specific, legitimate reasons supported by substantial evidence justifying rejection of Dr. Havens' opinion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –17

**c.  Dr. Vilela**

Plaintiff also argues the ALJ failed to reject the opinion of Dr. Vilela, a neurosurgeon.  (Ct. Rec. 18 at 17.)  In December 2006, Dr. Vilela completed a DSHS physical evaluation form.  (Tr. 277-80.)  Dr. Vilela's office visit notes from that day note that Plaintiff has been managed conservatively and underwent a few months of physical therapy for back pain.  (Tr. 275.)  Dr. Vilela continued to recommend conservative treatment and referred Plaintiff to a pain clinic.  (Tr. 275.)  Dr. Vilela indicated Plaintiff's back pain caused a marked interference in Plaintiff's ability to sit, stand, walk, lift and carry and opined that Plaintiff could do sedentary work.  (Tr. 278.)

The ALJ acknowledged Dr. Vilela's findings, but did not discuss the report in detail.  (Tr. 16, 19.)  The ALJ seems to have accepted Dr. Vilela's conclusion that Plaintiff can perform sedentary work despite Plaintiff's symptoms, but found that Plaintiff is capable of light work without further discussion of Dr. Vilela's opinion.  (Tr. 19.)  Defendant asserts the ALJ had discretion to reject Dr. Vilela's opinion because the ALJ noted inconsistencies between Plaintiff's statements and the objective medical evidence.  (Ct. Rec. 25 at 9.)  However, the ALJ's statement was intended to explain why Plaintiff's statements were not reliable, not to undermine the medical opinions cited.  The cursory treatment of the opinion of a treating specialist is inadequate.  The ALJ gave no reasons for rejecting the marked limitations identified by Dr. Vilela or the finding that Plaintiff can perform sedentary rather than light work.  The failure to adequately discuss the opinion of a treating physician is error.[4]

---

[4]It is noted that although the ALJ found Plaintiff is capable of light work and of performing past relevant work, the vocational expert

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -18

**3.   Obesity**

Plaintiff argues the ALJ failed to consider obesity into his analysis of Plaintiff's other impairments.   (Ct. Rec. 18 at 18.) Generally, the ALJ must determine the effects of evidence of obesity on the claimant's other impairments and general health.   *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003).   However, when there is no evidence that a claimant's obesity limits functioning, there is no error when the ALJ does not consider obesity in the sequential evaluation process.   *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).   In this case, the only evidence of the impact of obesity on Plaintiff's condition is a note by Dr. Vilela:

> At this point I would not recommend an L5-S1 fusion because the patient is overweight and he is now approaching 260 lbs. He also has hypertension, severe coronary artery disease and about two years ago underwent revascularization of his coronary arteries.   My recommendation at this point is that we will refer him to the Pain Clinic for conservative management.   I also encouraged him to lose weight, at least 40 lbs, and get his borderline diabetes and blood pressure under good control.   If eventually he loses weight to the point that he is about 200-210, we may consider doing an L5-S1 fusion to help him with his back pain.

(Tr. 275.)   The ALJ acknowledged Dr. Vilela's recommendation that he not have fusion surgery because he was overweight, but did not otherwise discuss obesity in his findings.   (Tr. 16.)   Based on Dr. Vilela's note, it is possible that Plaintiff's weight impacts his ability to obtain treatment which would relieve pain, thus impacting his limitations.   On the other hand, Dr. Vilela's note is not evidence that Plaintiff's pain would be eliminated if he lost weight, or even that surgery would be appropriate if Plaintiff lost weight.   Defendant does not make any argument regarding the impact of obesity, and since

testified that Plaintiff's past relevant work is sedentary work.   (Tr. 49.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -19

this matter is remanded for other reasons, the ALJ should consider the impact of obesity and discuss his conclusions on remand.

**4.    Step Four**

Plaintiff argues the ALJ's finding that Plaintiff can return to past relevant work is based on an incomplete hypothetical. (Ct. Rec. 18 at 20.)  Defendant asserts the ALJ did not err at step four, based on the assumption that the ALJ's findings on all other issues was legally sufficient.  Because the ALJ erred by failing to properly consider evidence of mental impairments, evidence of obesity, and the opinion of Dr. Vilela, it is not clear that the step four finding is free of error.  Thus, a new step four finding is appropriate on remand.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error.  On remand, the ALJ should conduct a new sequential evaluation, including reassessment of the psychological opinion evidence and further development of the record, if necessary. The ALJ should also consider and give weight to the opinion of Dr. Vilela and consider the impact of obesity throughout the sequential evaluation process.  Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **GRANTED**.  The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is **DENIED.**

3.   An application for attorney fees may be filed by separate

1   motion.

2       The District Court Executive is directed to file this Order and

3   provide a copy to counsel for Plaintiff and Defendant.   Judgment shall

4   be entered for Plaintiff and the file shall be **CLOSED**.

5       DATED August 4, 2010.

6

7                       S/ CYNTHIA IMBROGNO
                  UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -21